**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | 1:23-CR-142 |
| v. | The Honorable Leonie M. Brinkema |
| MARIO RODOLFO MEJIA CUBILLAS, | Sentencing: April 1, 2025 |
| *Defendant*. | |

### THE UNITED STATES' POSITION ON SENTENCING

The United States of America, by undersigned counsel, submits its position on the sentencing of the defendant, Mario Rodolfo Mejia Cubillas, who pled guilty to conspiracy to distribute five kilograms or more of cocaine knowing, intending, or having reasonable cause to believe it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963.

The defendant's conviction carries a 120-month mandatory minimum sentence, and the parties agree that the mandatory minimum applies because the defendant admitted to being a manager/supervisor and possessing a firearm in connection with the offense. *See* Statement of Facts ¶ 9, 11; Plea Agreement ¶ 5; 18 U.S.C. § 3553(f)(2) and (4). The parties also agree on the Guidelines calculation: The defendant's total offense level is 41, and he is in criminal history category I, resulting in a Guidelines range of 324-405 months. The United States respectfully recommends a sentence of 160 months, which accounts for all the § 3553 factors, including avoiding unwarranted sentence disparities while also factoring the defendant's stipulation to a leadership enhancement.

1

## BACKGROUND AND PROCEDURAL HISTORY

The defendant was part of a drug trafficking organization (DTO) responsible for importing tons of cocaine into the United States on an annual basis. As outlined in the plea documents, and as the Court is aware from other cases, cocaine traffickers often use a familiar route to move their product from South America to the United States. Traffickers, in this case from Colombia, send extremely large shipments of cocaine to the east coast of Honduras, a remote area of the country with weak law enforcement institutions, limited infrastructure, and minimal government presence. Traffickers in Honduras accept the shipments, coordinate its sale to others, and facilitate its transport across the interior of Honduras, toward the border with Guatemala. Cocaine is then smuggled through Guatemala and Mexico, over the United States border, and then distributed into the interior of the country.

The defendant was a longstanding and key part of that pipeline. His drug trafficking conduct dates to at least 2010, and he developed into a major trafficker, personally responsible for moving thousands of kilograms of cocaine per year. Statement of Facts ¶¶ 2, 8; PSR ¶¶ 22, 28. The DTO operated in the following manner: The defendant accepted large shipments of cocaine from coconspirator Cantillo-Duran, who ensured safe passage of cocaine from South America. For example, wire intercepts show that, on February 25, 2021, the defendant spoke with Cantillo-Duran about the transport of 2,000 kilograms of cocaine, and during that conversation Cantillo-Duran provided coordinates showing the location of a boat carrying cocaine. PSR ¶ 45. The defendant and Cantillo-Duran then supervised others unloading the cocaine, before it was broken-down into smaller quantities so that it could be smuggled across Honduras. The defendant admits that he and his workers carried handguns and long guns, including AR-15 and AK-47 rifles, in order to protect themselves and their contraband.

Statement of Facts ¶ 9; PSR ¶ 29. Numerous cooperating witnesses confirmed the defendant and others in the DTO carried those weapons. PSR ¶¶ 51, 53, 54.

The defendant also coordinated logistics for storing cocaine in stash houses and transporting cocaine to the DTO's distributors throughout the region and he supervised individuals responsible for carrying out those tasks. Statement of Facts ¶ 8; PSR ¶ 28.

The amount of cocaine involved is staggering. The defendant admitted to trafficking tons of kilograms annually. Statement of Facts ¶ 2; PSR ¶ 22. The defendant's admission is confirmed by drug seizures, wire intercepts, and statements from cooperating witnesses, all of which underscore the massive scale of the DTO's trafficking activities. Statement of Facts ¶¶ 7, 12-20; PSR ¶¶ 27, 32-40.

## ARGUMENT

### I. Sentencing Law and the Guidelines Calculation.

Although the Sentencing Guidelines are not mandatory (*United States v. Booker*, 543 U.S. 220, 245 (2005) (opinion of Breyer, J.)), the court is required to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After doing so, the court must consider the § 3553(a) sentencing factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to provide adequate deterrence to criminal conduct, and the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a). Ultimately, the sentence must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61 (opinion of Breyer, J.).

The defendant's conviction carries a mandatory minimum of 120 months, and the parties agree that the mandatory minimum applies. *See* 21 U.S.C. § 960(b)(1)(B); 18 U.S.C.

3

§ 3553(f)(2) and (4). Under the plea agreement, the parties agreed on the following:

- Base offense level 38 under U.S.S.G. § 2D1.1(c)(1).

- A two-level manager/supervisor enhancement under U.S.S.G. § 3B1.1(c).

- A two-level firearm enhancement under § 2D1.1(b)(1).

- A three-level reduction for acceptance of responsibility.

*See* Plea Agreement ¶ 5. The PSR also assessed—and the government understands the defendant does not contest—an additional two-level enhancement under U.S.S.G. § 2D1.1(b)(16)(C), which applies when a defendant is assessed a role enhancement and was directly involved in the importation of a controlled substance. PSR ¶ 76. The total offense level is 41, and the defendant is in criminal history category I. PSR ¶¶ 113-114. The Guidelines range is therefore 324-405 months.

**II.  A sentence of 160 months is appropriate under § 3553(a).**

Several of the § 3553(a) factors merit discussion. The defendant's conduct was extremely serious, and a substantial sentence is necessary for deterrence. *See* 18 U.S.C. § 3553(a)(1), (2)(B). In short, the defendant is responsible for the trafficking of a staggering amount of cocaine. Under the Guidelines, the base offense level is 38 when an offense involved at least 450 kilograms of cocaine. *See* U.S.S.G. § 2D1.1(c)(1). The defendant, by his own admission, is responsible for a quantity of cocaine orders of magnitude above that threshold. He sought personal enrichment by sending an incredible amount of harmful controlled substances to the United States: Cocaine use leads to addiction, negative long-term health effects, and, in some cases, overdoses. In fact, the risk of overdose in recent years has increased greatly, as traffickers sometimes spike cocaine with fentanyl, sometimes without the knowledge of users. Large-scale trafficking also facilitates other illegal conduct within the United States—including acts of

violence—associated with the drug trade.

The defendant's conduct also had negative consequences beyond the United States. Because the defendant's DTO operated on an international scale, its effects were international in scope. Organizations like the defendant's destabilize local governments, bribe public officials, and terrorize local populations in order to protect their trafficking activities.

In addition to fashioning a sentence that reflects the seriousness of the defendant's conduct, the Court should send a strong message to individuals who might be tempted to engage in similar behavior. Honduras remains a transshipment point for moving cocaine to the United States from South America, and large-scale trafficking depends on individuals like the defendant. Deterring others from following in the defendant's path means illustrating that defendants will be captured, extradited, convicted, and handed lengthy prison terms.

The Court must also take into consideration the need to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(6). The defendant is roughly as culpable as Velasquez Navarro, who this Court sentenced to 144 months. They were both responsible for a huge amount of cocaine trafficked through Honduras, on its way to the United States, using a similar modus operandi, except that the defendant stipulated to the two-level leadership enhancement. A sentence of 160 months is therefore appropriate in order to avoid unwarranted disparities.

**CONCLUSION**

For the reasons stated above, the United States respectfully submits that a sentence of 160 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Erik S. Siebert
United States Attorney

By:                  /s/
                  Philip Alito
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:    703-299-3700
Fax:          703-299-3890
Philip.Alito@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on March 25, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic

Filing to counsel of record in this case.

<div align="center" style="margin-left:40%">

    /s/                    

Philip Alito
Assistant United States Attorney

</div>